IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

RENDELL MILLER,

                                                   OPINION AND ORDER

              Plaintiff,

                                                     08-cv-044-bbc

     v

BURTON COX,

              Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

       This is a civil action for monetary and declaratory relief brought under 42 U.S.C. § 1983. Plaintiff Rendell Miller contends that defendant Burton Cox violated his Eighth Amendment rights by 1) failing to arrange for plaintiff's head to be x-rayed following a fall plaintiff took in the shower on July 14, 2007 and 2) failing to increase the strength of plaintiff's pain medication. At all times relevant to this case, plaintiff was a prisoner incarcerated at the Wisconsin Secure Program Facility Boscobel, Wisconsin.

       Now before the court is defendant's motion for summary judgment. Because plaintiff has failed to adduce sufficient evidence that defendant was deliberately indifferent to the head injury he suffered in a fall, I will grant defendant's motion for summary judgment.

       As an initial matter, I address plaintiff's objection to the use of his medical records

1

by defendant Cox in support of the motion for summary judgment. This objection lacks merit for two reasons. First, plaintiff's medical records are relevant evidence because plaintiff raised his medical condition as an issue in this case. Second, plaintiff signed an authorized release for the disclosure of his medical records on July 21, 2008.

For the purpose of deciding this motion, I find the following facts to be material and undisputed.

## UNDISPUTED FACTS

Plaintiff Rendell Miller is a Wisconsin inmate incarcerated at the Wisconsin Secure Program Facility in Boscobel, Wisconsin. Defendant Burton Cox, Jr., D.O. is employed by the Wisconsin Department of Corrections as a physician at the Wisconsin Secure Program Facility. Defendant Cox treats the illnesses and injuries of inmates and arranges for professional consultation when necessary.

When inmates enter the Wisconsin Secure Program Facility, they are given an inmate handbook informing them that if they require non-emergency medical treatment they must submit a health services request to the health services unit. They are informed that if they need emergency medical treatment, they need to alert staff of their problem.

On July 14, 2007, health services staff was called to the Alpha Unit because plaintiff had reported that he had slipped while showering and hit his head on the floor. Although

2

it is not clear whether plaintiff lost consciousness in the fall, he was able to walk to the health services unit without any difficulty. At the health services unit, staff checked his vital signs. His blood pressure was 156/86 and his pulse was 86. Plaintiff had moderate swelling on the side of his head and complained of pain. Health services staff treated plaintiff's localized swelling with ice and gave him acetaminophen for pain. Staff advised plaintiff to notify the sergeant if any problems developed.

About a week later, on July 20, 2007, plaintiff submitted a request for a refill of the acetaminophen for his headaches. Health services staff refilled the acetaminophen and put him on the list to see the doctor. Defendant Cox saw plaintiff on July 23, 2007 and assessed his head injury. Defendant noted that plaintiff had soft swelling without defect on the occipital skull and that his neurological exam was normal. Defendant diagnosed post-concussion cephalgia and prescribed plaintiff 800 milligrams of ibuprofen four times a day with a snack as needed for six months.

Defendant saw plaintiff again on August 10, 2007. They discussed plaintiff's post-concussion cephalgia and persistent "knot" on his skull. Defendant changed plaintiff's prescription from ibuprofen to 500 milligrams of naproxen twice a day for three months. On August 14, Dr. Maier, plaintiff's psychologist, prescribed 100 milligrams of amitriptyline to help him sleep. On August 20, defendant noted in plaintiff's medical record that pursuant to plaintiff's request he had changed his prescription from naproxen to 800 milligrams of

3

ibuprofen four times a day for six months. Defendant has no knowledge of any health services requests plaintiff submitted between September 1, and December 1, 2007 concerning his head injury.

On December 5, 2007, plaintiff submitted a health services request to see defendant for his head injury. On December 6, staff informed plaintiff that he had been scheduled for an appointment with the doctor. On December 9, plaintiff filed another request to see the doctor. Defendant responded to plaintiff's request by informing him that it could take six to twelve months to recover from post-concussion syndrome and that the knot on plaintiff's skull was like a scar for which there was nothing further that could be done.

On December 22, 2007, health services staff saw plaintiff in response to his December 19, 20 and 22 requests concerning the knot on the back of his head. Staff took his vital signs and told him he was on the list to be seen by the doctor. Health services staff saw plaintiff again on December 24 for his complaints of back pain and persistent headaches. Staff noted that plaintiff showed no obvious signs or symptoms of discomfort and that he was alert and oriented . Staff encouraged plaintiff to keep a headache record and take his prescribed medication.

On December 25, 2007, plaintiff submitted a health services request, complaining of headaches, dizziness and pain. That same day he was seen in the health services unit for complaints of back pain. He asked to see an orthopedic specialist for his back. Staff

4

prescribed him an analgesic cream for his back pain.

On December 27, 2007, defendant saw plaintiff for his continued complaints of headaches and lightheadedness. Defendant noted that plaintiff moved with ease. Although plaintiff had no gross neurological deficits, he did have a bony "knot" on his occipital skull. Defendant requested that a computed tomography scan of plaintiff, which was performed on January 4, 2008 and showed no abnormalities.

OPINION

Plaintiff contends that defendant violated his Eighth Amendment rights by being deliberately indifferent to his serious medical need. Under the Eighth Amendment, a prison official may violate a prisoner's right to medical care if the official is "deliberately indifferent" to a "serious medical need." Estelle v. Gamble, 429 U.S. 97, 104-05 (1976). A "serious medical need" may be a condition that a doctor has recognized as needing treatment or one for which the necessity of treatment would be obvious to a lay person. Johnson v. Snyder, 444 F.3d 579, 584-85 (7th Cir.2006). The condition does not have to be life threatening. Id. A medical need may be serious if it "significantly affects an individual's daily activities," Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir.1998), if it causes pain, Cooper v. Casey, 97 F.3d 914, 916-17 (7th Cir.1996), or if it otherwise subjects the prisoner to a substantial risk of serious harm, Farmer v. Brennan, 511 U.S. 825 (1994).

It is not disputed that plaintiff had post-concussion cephalgia and that defendant prescribed him pain medication for six months in an effort to alleviate pain. Relying on this evidence, a jury could reasonably find that plaintiff has a serious medical need. However, the same cannot be said regarding the "deliberate indifference" prong of plaintiff's Eighth Amendment claim.

"Deliberate indifference" means that the officials were aware that the prisoner needed medical treatment, but disregarded the risk by failing to take reasonable measures. Forbes v. Edgar, 112 F.3d 262, 266 (7th Cir. 1997). Inadvertent error, negligence, gross negligence and ordinary malpractice are not cruel and unusual punishment within the meaning of the Eighth Amendment. Vance v. Peters, 97 F.3d 987, 992 (7th Cir. 1996); Snipes v. Detella, 95 F.3d 586, 590-91 (7th Cir. 1996). Thus, neither incorrect diagnosis nor improper treatment resulting from negligence states an Eighth Amendment claim. Gutierrez v. Peters, 111 F.3d 1364, 1374 (7th Cir. 1997). Instead, "deliberate indifference may be inferred [from] a medical professional's erroneous treatment decision only when the medical professional's decision is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible did not base the decision on such a judgment." Estate of Cole v. Fromm, 94 F.3d 254, 261-62 (7th Cir. 1996).

Under these standards, therefore, the "deliberate indifference" prong of plaintiff's claim has three elements:

6

(1) Did plaintiff need medical treatment?

(2) Did defendants know that plaintiff needed treatment?

(3) Despite their awareness of the need, did defendants fail to take reasonable measures to provide the necessary treatment?

Because plaintiff would have the burden to prove his case at trial, it is his burden at the summary judgment stage to come forward with enough evidence on each of these elements to allow a reasonable jury to find in his favor. Borello v. Allison, 446 F.3d 742, 748 (7th Cir. 2006); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-24 (1986).

The crux of this case is whether defendant knew plaintiff needed medical treatment and failed to provide reasonable medical treatment. Immediately after his fall on July 14, 2007, plaintiff was seen by health services staff who gave him ice for the swelling and prescribed acetaminophen for pain. A week later when plaintiff requested a refill of the medication, he was put on the list to see the doctor. After examining plaintiff on July 23, 2007, defendant concluded that plaintiff had post concussion cephalgia and prescribed 800 milligrams of ibuprofen four time a day. In his affidavit plaintiff asserts that defendant changed his medication on August 10, 2007 to a less expensive, less effective medication, but he has not submitted any evidence to support his contention that the new medication, naproxen, was either cheaper or less effective than ibuprofen. Nonetheless, after plaintiff was on naproxen for ten days defendant changed his prescription back to ibuprofen.

7

Regardless whether the naproxen was cheaper or less effective, plaintiff received pain medication in an attempt to treat the pain associated with his head injury. Plaintiff may be arguing that he was entitled to more effective pain medication. However, plaintiff is not entitled to a certain pain medication as long as he is receiving some treatment for his pain. Snipes, 95 F. 3d at 592. Plaintiff's receipt of pain medications establishes that he received at least minimal treatment of his pain, which is what the Constitution requires.

In his affidavit plaintiff avers that from July 23, 2007 until December 27, 2007, he asked defendant to refer him to an orthopedic specialist for x-rays, however, he submitted no health services requests for any treatment between July 27, 2007 and December 5, 2007. There is no evidence in the record to suggest that defendant knew plaintiff needed any further medical treatment for his head injury after he saw plaintiff on August 20, 2007 until plaintiff again requested treatment for his head injury in the beginning of December.

Furthermore, once plaintiff did begin request further treatment for his head injury, defendant took reasonable steps to treat plaintiff's medical needs. Defendant initially responded by informing plaintiff that it could take six to twelve months to recover from post-concussion syndrome and that nothing more could be done. Nursing staff saw plaintiff on December 22 and 24, 2007. They noted that he showed no obvious signs or symptoms of discomfort. Nursing staff saw plaintiff again on December 25 for back pain and prescribed an analgesic cream for his pain. Defendant examined plaintiff on December

8

27 and ordered that plaintiff undergo a computed tomography scan. The scan was performed on plaintiff on January 4, 2008, which was only 8 days after defendant examined plaintiff. The scan showed no abnormalities.

The evidence supports the conclusion that plaintiff received ongoing attention to and treatment of his head injury. He was seen by the nursing staff and defendant when he requested treatment and he was prescribed medication for his pain. Moreover, the January 4 computed tomography scan was normal, which indicates that the treatment plaintiff received did not make his injury worse. In sum, plaintiff has offered no admissible evidence from which a reasonable jury could find that the defendant knew plaintiff needed medical treatment and failed to provide reasonable medical treatment for him.

Although plaintiff may believe that he could have received better treatment, the Constitution does not require prison officials to provide prisoners with the medical care they believe to be appropriate; it requires officials to rely on their medical judgment to provide prisoners with care that is reasonable in light of their knowledge of each prisoner's problems. E.g. Estelle, 429 U.S. at 107 (plaintiff's objection to prison physician's failure to order x-ray of his back failed to state claim under Eighth Amendment when prison officials provided minimal treatment). The Eighth Amendment does not require prison medical officials to keep an inmate pain-free or even to administer the least painful treatment. Snipes, 95 F.3d at 592. In fact, the decision "whether one course of treatment is preferable to another" is

9

"beyond the [Eighth] Amendment's purview." Id. at 591.

Thus, to defeat defendant's motion, plaintiff had needed to offer more than his opinion that defendant made the wrong decision about his treatment by not sending him to an orthopedic specialist or giving him different pain medication. Plaintiff had to provide facts from which a reasonable jury could determine that defendant's treatment was a "substantial departure from accepted professional judgment." Plaintiff did not meet this standard. Negligence may sometimes constitute medical malpractice, but mere negligence is not cruel and unusual punishment. Bryant v. Madigan, 84 F.3d 246, 249 (7th Cir. 1996).

As a final note, plaintiff attempts to use his affidavit to introduce evidence that defendant was deliberately indifferent to plaintiff's medical need because on July 23, 2007 plaintiff observed that defendant's voice was slurred, his eyes were glazed and he laughed at nothing. He also submits copies of documents in previous disciplinary proceedings against defendant. Although this evidence was not submitted in the form of additional proposed findings of fact as required under this court's summary judgment procedures, I will briefly discuss it. Neither plaintiff's observations of defendant's behavior nor any previous proceedings against defendant change the fact that plaintiff received reasonable treatment for his head injury. He has presented no evidence to contradict the medical records that show that he received reasonable medical treatment and that his head injury did not become

worse as a result of the treatment. Therefore, I will grant defendant's motion for summary judgment.

## ORDER

IT IS ORDERED that the motion for summary judgment, dkt. #50, filed by defendant Burton Cox is GRANTED. The clerk of court is directed to enter judgment in favor of defendant and close this case.

Entered this 24th day of December, 2008.

BY THE COURT:

/s/

_____
BARBARA B. CRABB
District Judge